**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TZIPORA GLICK,<br><br>                    *Plaintiff,*<br><br>          vs.<br><br>CMRE FINANCIAL SERVICES, INC.,<br><br>                    *Defendant.* | Case No. 7:21-cv-07456-NSR |

<u>**MEMORANDUM IN SUPPORT**</u>
<u>**OF THE CONSTITUTIONALITY OF THE FAIR DEBT COLLECTION**</u>
<u>**PRACTICES ACT, 15 U.S.C. § 1692c(b)**</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................ii

TABLE OF AUTHORITIES ...........................................................................iii

INTRODUCTION ............................................................................................ 1

BACKGROUND............................................................................................... 2

   I.   Legal Background ................................................................................. 2

   II.  Factual and Procedural Background................................................... 5

ARGUMENT .................................................................................................... 7

   I.   The Court Should First Resolve All Non-Constitutional Issues. ...... 7

   II.  The Court Should Reject Defendant's First Amendment Challenge. ............ 10

     A.   Section 1692c(b) is subject to intermediate scrutiny. ................................. 10

       1.   The speech at issue is commercial speech. ................................. 10

       2.   Intermediate scrutiny is the appropriate standard of review................... 11

       3.   Strict scrutiny would be inappropriate in this case. ............................... 13

     B.   Section 1692c(b) passes intermediate scrutiny. ........................................ 17

     C.   Section 1692c(b) also would pass strict scrutiny........................................ 21

CONCLUSION................................................................................................ 23

# TABLE OF AUTHORITIES

## CASES

*ACA Int'l v. Healey,*
   457 F. Supp. 3d 17 (D. Mass. 2020) ................................................................. 10, 12

*Aptive Env't, LLC v. Town of Castle Rock,*
   959 F.3d 961 (10th Cir. 2020) ................................................................................... 16

*Barr v. Am. Ass'n of Political Consultants, Inc.,*
   140 S. Ct. 2335 (2020) ................................................................................... 13, 15, 16

*Bd. of Trustees of the State Univ. of N.Y. v. Fox,*
   492 U.S. 469 (1989) .......................................................................................... 19, 21

*Berg v. Merchants Ass'n Collection Div., Inc.,*
   586 F. Supp. 2d 1336 (S.D. Fla. 2008) ........................................... 11, 12, 18, 19, 20

*Carlisle Ventures, Inc. v. Banco Español de Crédito, S.A.,*
   176 F.3d 601 (2d Cir. 1999) ..................................................................................... 10

*Campuzano-Burgos v. Midland Credit Mgmt., Inc.,*
   550 F.3d 294 (3d Cir. 2008) ....................................................................................... 3

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
   447 U.S. 557 (1980) ........................................................... 10, 12, 13, 16, 17, 21

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
Care, LLC,*
   433 F.3d 181 (2d Cir. 2005) ....................................................................................... 8

*Davis v. Phelan Hallinan & Diamond PC,*
   687 F. App'x 140 (3d Cir. 2017) ............................................................................... 9

*Douglass v. Convergent Outsourcing,*
   765 F.3d 299 (3d Cir. 2014) ............................................................................... 17, 18

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,*
   485 U.S. 568 (1988) .................................................................................................... 9

*Evankavitch v. Green Tree Servicing, LLC,*
   793 F.3d 355 (3d Cir. 2015) ..................................................................................... 17

*Gburek v. Litton Loan Servicing LP,*
   614 F.3d 380 (7th Cir. 2010) ................................................................................... 14

*Greater New Orleans Broad. Ass'n v. United States,*
   527 U.S. 173 (1999) .................................................................................................. 19

*Greater Phila. Chamber of Commerce v. City of Phila.,*
   949 F.3d 116 (3d Cir. 2020) ............................................................................... 11, 16

*Gulf Oil Co. v. Bernard,*
  452 U.S. 89 (1981) ............................................................................................... 7

*Hamilton v. Bromley,*
  862 F.3d 329 (3d Cir. 2017) ................................................................................. 7

*Hunstein v. Preferred Collection & Mgmt. Servs.,*
  994 F.3d 1341 (11th Cir. 2021) ............................................................... 3, 4, 5, 6

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.,*
  17 F.4th 1016 (11th Cir. 2021) ..................................................... 4, 5, 6, 8, 20

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.,*
  17 F.4th 1103 (11th Cir. 2021) ............................................................................ 4

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,*
  559 U.S. 573 (2010) .............................................................................................. 2

*Koby v. ARS Nat. Servs., Inc.,*
  No. 09-cv-0780, 2010 WL 1438763 (S.D. Cal. Mar. 29, 2010) ................... 11, 12, 18

*Liberty Mut. Ins. Co. v. Donegan,*
  746 F.3d 497 (2d Cir. 2014) .............................................................................. 7, 8

*Liu v. MRS BPO, LLC,*
  No. 21-cv-2919, 2021 WL 5630764 (N.D. Ill. Nov. 30, 2021) ............................... 8

*Lupia v. Medicredit, Inc.,*
  8 F.4th 1184 (10th Cir. 2021). ......................................................................... 17

*Mark v. J.C. Christensen & Assocs., Inc.,*
  No. 09-cv-100, 2009 WL 2407700 (D. Minn. Aug. 4, 2009) ................. 11, 12, 18, 21

*Mo. Broads. Ass'n v. Lacy,*
  846 F.3d 295 (8th Cir. 2017) ........................................................................... 17

*Nat'l Inst. of Family & Life Advocates v. Becerra,*
  138 S. Ct. 2361 (2018) ..................................................................................... 15

*Nw. Austin Mun. Util. Dist. No. One v. Holder,*
  557 U.S. 193 (2009) ............................................................................................ 7

*Nyanjom v. NPAS Solutions, LLC,*
  No. 21-cv-1171-JAR-ADM, 2022 WL 168222 (D. Kan. Jan. 19, 2022) .................... 8

*Ohralik v. Ohio State Bar Ass'n,*
  436 U.S. 447 (1978) ..................................................................................... 10, 12

*Owens-Benniefield v. Nationstar Mortg. LLC,*
  258 F. Supp. 3d 1300 (M.D. Fla. 2017) .............................................................. 14

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ....................................................................... 13, 15, 16, 21

iv

*Reno v. ACLU*,
   521 U.S. 844 (1997) ........................................................................ 21, 22

*Retail Digital Network LLC v. Prieto*,
   861 F.3d 839 (9th Cir. 2017) ................................................................. 17

*Skilling v. United States*,
   561 U.S. 358 (2010) ............................................................................... 9

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ............................................................................. 12

*Spector Motor Serv. v. McLaughlin*,
   323 U.S. 101 (1944) ............................................................................... 7

*Sputz v. Alltran Fin., LP*,
   No. 21-cv-4663-CS, 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021) ............... 8

*Stover v. Fingerhut Direct Mktg., Inc.*,
   709 F. Supp. 2d 473 (S.D.W. Va. 2009) ................................................. 12

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ...................................................................... 8, 21

*United States v. Edge Broad. Co.*,
   509 U.S. 418 (1993) ........................................................................ 11, 12

*United States v. Stevens*,
   559 U.S. 460 (2010) ............................................................................... 6

*Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) ............................................................................. 16

*Vugo, Inc. v. City of New York*,
   931 F.3d 42 (2d Cir. 2019)............................................... 16, 17, 18, 19

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) ............................................................................... 6

*Williams v. Rushmore Loan Mgmt. Servs., LLC*,
   No. 3:15-CV-673-RNC, 2018 WL 1582515 (D. Conn. Mar. 31, 2018).................... 17

*Williams-Yulee v. Fla. Bar*,
   575 U.S. 433 (2015) ............................................................................. 22

*Wisconsin v. Mitchell*,
   508 U.S. 476 (1993) ............................................................................. 14

## STATUTES

15 U.S.C. § 1692a.................................................................................. 2, 9

15 U.S.C. § 1692c(b)........................................................................ *passim*

15 U.S.C. § 1692f.................................................................................... 9

15 U.S.C. § 1692k.................................................................................... 2

**OTHER AUTHORITIES**

Appellee's Petition for Rehearing and Rehearing En Banc,
    *Hunstein v. Preferred Collection & Mgmt. Servs.*, No. 19-14434 (May 26, 2021).... 4

Brief of Amici Curiae Mortgage Bankers Association,
    *Hunstein v. Preferred Collection & Mgmt. Servs.,* No. 19-14434 (Jan. 25, 2022).... 4

En Banc Brief for Preferred Collection & Management Services, Inc.,
    *Hunstein v. Preferred Collection & Mgmt. Servs.,* No. 19-14434 (Jan. 18, 2022).... 4

Memorandum to Counsel or Parties,
    *Hunstein v. Preferred Collection & Mgmt. Servs.,* No. 19-14434 (Jan. 11, 2022).... 4

Memorandum to Counsel or Parties,
    *Hunstein v. Preferred Collection & Mgmt. Servs.,* No. 19-14434 (Nov. 23, 2021).... 4

Niket Nishant, *Morgan Stanley Faces Data Breach, Corporate Client Info Stolen in
    Vendor Hack*,
    Reuters (July 8, 2021), https://perma.cc/D8XV-66C2. ........................................... 20

S. Rep. 95–382 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695 .................................... 18

## INTRODUCTION

In this case, Defendant CMRE Financial Services, Inc. has raised a constitutional challenge under the First Amendment to certain restrictions imposed by the Fair Debt Collection Practices Act on debt collectors' communications. As relevant here, save for certain exceptions, and in the absence of a debtor's prior consent, the FDCPA prohibits debt collectors from communicating with a person other than the debtor when collecting on a debt. *See* 15 U.S.C. § 1692c(b). Plaintiff Tzipora Glick claims that Defendant violated this provision by transmitting information about Plaintiff and her debt, to a third-party commercial mail vendor so that the vendor could send a debt-collection letter to Plaintiff on Defendant's behalf. Among other defenses, Defendant has raised a constitutional challenge to Section 1692c(b), arguing that, when applied to restrict a debt collector's communications with a commercial mail vendor for purposes of preparing and sending a debt-collection letter, the statute violates the Free Speech Clause of the First Amendment. Defendant appears to have abandoned this argument on reply. But, in any event, Defendant's novel conclusion is not compelled in this case.

*First*, as a threshold matter, the Court should not address Defendant's constitutional arguments until all other non-constitutional issues have been exhausted. Defendant has moved to dismiss based on a variety of non-constitutional grounds. The Court should resolve all those possible grounds for decision first in order to avoid a potentially unnecessary constitutional ruling.

*Second*, even if the Court were to consider the merits, Defendant's free-speech challenge is unavailing. Though the bulk of Defendant's briefing is dedicated to invoking strict scrutiny, Section 1692c(b) regulates commercial speech and so, under controlling Supreme Court precedent, is subject only to intermediate scrutiny. Given Congress's substantial interest in safeguarding debtors' privacy during the debt

- 1 -

collection process, the direct manner in which the statute advances that interest, and the reasonable relationship between Congress's interest and the speech restrictions imposed, Section 1692c(b) easily satisfies that more generous standard of review. And even if strict scrutiny somehow did apply, Section 1692c(b) would satisfy that standard of review because the statute is narrowly tailored to advancing a compelling interest in protecting debtors' privacy.

In brief, no matter how the Court rules on the underlying merits of Plaintiff's claims, it should not find Section 1692c(b) unconstitutional as applied to Defendant's alleged conduct in this case.

## BACKGROUND

### I.    Legal Background

"Congress enacted the FDCPA in 1977 to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citation omitted). The FDCPA applies only to the collection of consumer debts. *See* 15 U.S.C. § 1692a(5) (defining "debt" as "any obligation . . . to pay money arising out of a transaction in which the money . . . which [is] the subject of the transaction [is] primarily for personal, family, or household purposes"). Private persons may sue for violations of the FDCPA and obtain relief in the amount of any actual damages, plus statutory damages of up to $1,000 in an individual action or up to $500,000 or one percent of the debt collector's net worth in a class action. *See* 15 U.S.C. § 1692k.

As relevant to this proceeding, the FDCPA limits debt collectors' ability to communicate with third parties when collecting on a consumer debt:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). The cross-referenced provision, Section 1692b, governs the manner in which a debt collector may communicate "with any person other than the consumer for the purpose of acquiring location information" and imposes a number of restrictions on such communications. Among these restrictions are prohibitions on stating that the consumer owes a debt, § 1692b(2), using any language or symbol that indicates the sender is in the debt collection business or that the communication relates to the collection of a debt, § 1692b(5), and contacting any person other than the consumer's attorney once the debt collector is aware that the consumer is represented by an attorney and is able to contact that attorney, § 1692b(6).

In *Hunstein v. Preferred Collection & Management Services, Inc.*, a panel of the Eleventh Circuit considered whether a debt collector violates Section 1692c(b) when, absent an applicable exception, it transmits debt-related information to a commercial mail vendor so that the vendor may prepare and send a dunning letter to a debtor. 994 F.3d 1341, 1344 (11th Cir. 2021) ("*Hunstein I*").[1] Applying what it described as "the plain meaning of the phrase 'in connection with,'" the *Hunstein I* panel found it "inescapable" that the alleged communication in that case—which revealed the debtor's status as a debtor, the exact balance of the debt, the name of the entity to which he owed the debt, the nature of the debt (which was incurred to pay for a child's

---

[1] A "dunning" letter is one which demands payment of a debt from a delinquent debtor. *See Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 300 (3d Cir. 2008) (citing Black's Law Dictionary 502 (6th ed. 1990)).

medical treatments), and the name of the debtor's child, *id.* at 1345—"at least concerned, was with reference to, and bore a relationship or association to its collection of [the] debt." *Id.* at 1349 (internal quotation marks omitted). In those circumstances, the panel found that a debtor could state a claim for a violation of Section 1692c(b). *See id.*

Subsequently, the panel granted rehearing and, in a divided decision, reaffirmed its interpretation of Section 1692c(b). *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1016, 1020 (11th Cir. 2021) ("*Hunstein II*"). On November 17, 2021, however, the full Eleventh Circuit sua sponte voted to vacate the panel's opinion and rehear the case en banc. *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1103 (11th Cir. 2021). The en banc court ordered further briefing, and held oral argument on February 22, 2022. *See* Memorandum to Counsel or Parties, *Hunstein*, No. 19-14434 (Nov. 23, 2021); Memorandum to Counsel or Parties, *Hunstein*, No. 19-14434 (Jan. 11, 2022).[2]

---

[2] To date, constitutional questions have not played a prominent role in the *Hunstein* litigation. Neither of the panel opinions in *Hunstein I* and *Hunstein II* considered the constitutional implications of their interpretation of Section 1692c(b). The defendant debt collector's petition for rehearing en banc primarily challenged the panel's ruling that the plaintiff had established Article III standing. *See* Appellee's Petition for Rehearing and Rehearing En Banc, *Hunstein v. Preferred Collection & Mgmt. Servs.*, No. 19-14434 (May 26, 2021). And the Eleventh Circuit ordered en banc briefing to focus on whether the plaintiff has Article III standing. *See* Memorandum to Counsel or Parties, *Hunstein*, No. 19-14434 (Nov. 23, 2021). Nevertheless, in their en banc briefs, the defendant and one group of amici raised First Amendment concerns with the panel's interpretation of Section 1692c(b). *See* En Banc Brief for Preferred Collection & Management Services, Inc., *Hunstein*, No. 19-14434 (Jan. 18, 2022); Brief of Amici Curiae Mortgage Bankers Association et al. in Support of Appellee's Brief to the En Banc Court, *Hunstein*, No. 19-14434 (Jan. 25, 2022).

## II.    Factual and Procedural Background

In this case, Plaintiff seeks statutory damages, asserting substantially the same claim under Section 1692c(b) that the Eleventh Circuit recognized in its now-vacated opinions in *Hunstein I* and *Hunstein II*.   *See* Complaint, ECF No. 1-1 (Compl.).[3]   Plaintiff's claim arises out of Defendant's efforts to collect on a personal medical debt.   *See id*. ¶ 6.   As alleged in the complaint, Plaintiff incurred a medical bill for services, and this bill was later passed on to Defendant for the purpose of collecting on the debt.   *See id*. ¶¶ 6–7.   To collect on the debt, Defendant used a third-party vendor to send a collection letter to Plaintiff.   *See id*. ¶¶ 8–9.   The complaint alleges that Defendant disclosed Plaintiff's personal information, including the existence of Plaintiff's outstanding debt obligation, to this third-party vendor.   *See id*. ¶ 10.   On December 2, 2021, Defendant filed its motion to dismiss, alongside all supporting and opposing briefs.   *See* Def.'s Mot., ECF No. 10; *see also* Def.'s Br., ECF No. 11.

Defendant's motion raises both constitutional and non-constitutional grounds for judgment.   With respect to its constitutional arguments, Defendant argues first that if Section 1692c(b) prohibits debt collectors from using mail vendors, then it is a content-based restriction on speech subject to strict scrutiny.   Def.'s Br. at 16–19.   Defendant further contends that, so construed, Section 1692c(b) would fail strict scrutiny because it is a "blanket ban on incidental third-party communications" that "is not narrowly tailored to fit the interest" of "protecting consumers from the embarrassment of having family, friends, neighbors, or employer[s] find out they are in debt."   *Id*. at 19.   Alternatively, Defendant argues that Section 1692c(b) would also

---

[3] Plaintiff also asserts several other claims pursuant to other provisions of the FDCPA.   *See, e.g.*, Compl. ¶ 36 (citing 15 U.S.C. §§ 1692e).   Because Defendant does not challenge the constitutionality of those provisions, the government does not address those statutes or claims in this brief.

fail intermediate scrutiny because there is no substantial government interest in "[e]liminating routine, confidential business communications" and doing so "extends far beyond prohibiting abusive practices of contacting bystanders." *Id.* at 20.  Given these alleged constitutional problems, Defendant urges the Court to invoke constitutional avoidance principles in interpreting the scope of Section 1692c(b).  *See id.* at 21–22.

On December 15, 2021, Defendant filed a Notice of Constitutional Challenge, which characterizes Defendant's motion for judgment on the pleadings as contending that Section 1692c(b), "on its face and as applied, is an unconstitutional restriction on speech in violation of the First Amendment of the U.S. Constitution."  *See* Notice, ECF No. 14.[4]  Plaintiff filed a response brief in opposition to Defendant's motion.  *See* Pl.'s Opp'n, ECF No. 13.  In its reply brief, Defendant did not reassert any of its constitutional arguments or respond to Plaintiff's relevant counterarguments; instead, it emphasized the vacatur of *Hunstein I* and *Hunstein II* and a select subset of its non-constitutional arguments.  *See* Def.'s Reply, ECF No. 12.

On February 14, 2022, pursuant to this Court's individual rules, the United States acknowledged Defendant's constitutional challenge and sought an extension

---

[4] Notwithstanding this characterization of the constitutional challenge in this case as a "facial" one, Defendant's motion appears to raise only an as-applied challenge.  Moreover, a plaintiff raising a facial challenge generally "must establish that a 'law is unconstitutional in all of its applications.'"  *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015) (quoting *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449 (2008)).  Yet Defendant concedes that the statute would be constitutional if "properly tailor[ed]."  Def.'s Br. at 19.  And even though "a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep,'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. State Grange,* 552 U.S. at 449 n.6), Defendant acknowledges that there are many plainly legitimate applications of Section 1692c(b)'s restrictions on third-party communications, *see* Def.'s Br. at 19.

of time for the United States to determine whether to intervene. *See* ECF No. 16. The Court granted this extension, setting March 31, 2022 as the deadline for the United States to intervene. *See* ECF No. 17. Pursuant to 28 U.S.C. § 2403(a), the United States now intervenes in this action to defend the constitutionality of Section 1692c(b) as applied to Defendant's provision of debtor information to a commercial mail vendor in order to print and send a collection letter to Plaintiff.

## ARGUMENT

## I. The Court Should First Resolve All Non-Constitutional Issues.

As an initial matter, this Court should not address Defendant's constitutional challenge until it resolves all other potentially dispositive issues. "[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that [courts] ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944); s*ee also Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 204–06 (2009). Thus, before considering the merits of Defendant's constitutional arguments, the Court will first need to determine whether there are jurisdictional or statutory bases for decision that would make it unnecessary to render a constitutional ruling in this case.

*First*, the Court must assess whether Plaintiff has Article III standing to assert her claim. "Because federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, and because the statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, Article III jurisdiction is always an antecedent question." *Hamilton v. Bromley*, 862 F.3d 329, 334 (3d Cir. 2017) (cleaned up); *see also Liberty*

*Mut. Ins. Co. v. Donegan*, 746 F.3d 497, 502 n.2 (2d Cir. 2014) ("Article III standing is the threshold question in every federal case, determining the power of the court to entertain the suit." (internal quotation marks omitted)).   That remains true even where no party questions a plaintiff's standing.   *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*.").   Thus, even though Defendant advances no arguments against Plaintiff's standing, the Court cannot reach Defendant's constitutional arguments without first assuring itself that Plaintiff has standing to bring her claim.

It may be relevant to the Court's standing analysis that, following the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), several federal courts have found that allegations much like Plaintiff's are insufficient to give rise to Article III standing.   *See, e.g.*, *Nyanjom v. NPAS Solutions, LLC*, No. 21-cv-1171-JAR-ADM, 2022 WL 168222, at *2–6 (D. Kan. Jan. 19, 2022); *Sputz v. Alltran Fin., LP*, No. 21-cv-4663-CS, 2021 WL 5772033, at *2–6 (S.D.N.Y. Dec. 5, 2021); *Liu v. MRS BPO, LLC*, No. 21-cv-2919, 2021 WL 5630764, at *2–4 (N.D. Ill. Nov. 30, 2021); *see also Hunstein II*, 17 F.4th at 1045 (Tjoflat, J., dissenting).   Others have found that, under at least some circumstances, a plaintiff may adequately allege an injury-in-fact from the disclosure of private information to a mail vendor.   *See Hunstein II*, 17 F.4th at 1027, 1031.[5]   Whatever its own conclusions on these jurisdictional questions might be, the Court must first decide them before considering the merits of Defendant's constitutional defenses.

---

[5] In citing these decisions, the United States seeks only to highlight authorities that may be relevant to the jurisdictional question before the Court.   At this time, the United States takes no position as to whether Plaintiff's allegations are sufficient to establish Article III standing in this case.

- 8 -

*Second*, the Court will need to address the slate of non-constitutional grounds for dismissal that Defendant raises. *See, e.g.*, Def.'s Br. at 4–16, 22–30. The United States has intervened solely for the purpose of defending the constitutionality of Section 1692c(b) and, at this time, takes no position on the merits of Defendant's non-constitutional defenses. It is apparent, however, that the Court's resolution of the statutory questions that Defendant raises might obviate the need to consider the Section 1692c(b)'s constitutionality.[6] This Court should decline to rule on the constitutionality of Section 1692c(b) unless Defendant's motion cannot be resolved on other grounds.

---

[6] Even if the Court does conclude that Section 1692c(b) cannot constitutionally be applied to Defendant's alleged conduct in this case, it must consider whether a saving construction of the statute possible. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (when "an otherwise acceptable construction of a statute would raise serious constitutional problems, [a court] will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress"); *Skilling v. United States*, 561 U.S. 358, 409 n.43 (2010) (noting that "cases 'paring down' federal statutes to avoid constitutional shoals are legion"). Without endorsing the argument, the United States notes Defendant's contention that a debt collector's transmission of information to its contracted vendor for the singular purpose of facilitating the mailing of a letter from the debt collector to the plaintiff is not a "communicat[ion]" within the scope of Section 1692c(b). *See* Def.'s Br. at 4–7. The FDCPA defines the term "communication" as "the conveying of information regarding a debt directly or indirectly to any person *through any medium*," 15 U.S.C. § 1692a(2) (emphasis added), and it contemplates the use of telegrams to send debt-communications to a debtor, *see* 15 U.S.C. § 1692f(5). Those provisions suggest that, at least in some circumstances, use of a *bona fide* third party service provider as a conduit to relay information to its recipient may not constitute a communication *to* the third party for purposes of the statute. One such circumstance might be when the record establishes that the third party lacks discretion in crafting the communication to the debtor— e.g., when the third party is, like a telegraph service provider, a mere transcriber or transmitter, passing to the debtor the precise message that the debt collector has dictated. *Cf. Davis v. Phelan Hallinan & Diamond PC*, 687 F. App'x 140, 144 (3d Cir. 2017) (in considering whether mailings were "communications," noting that there was no allegation "that any third party ever received or opened those letters").

## II.     The Court Should Reject Defendant's First Amendment Challenge.

If the Court, after considering all non-constitutional grounds for decision, determines that it must reach the constitutional defenses raised by Defendant, the Court should reject them.  Defendant's primary contention is that Section 1692c(b), if applied to Defendant's alleged use of a commercial mail vendor to send a collection letter to Plaintiff, is a content-based restriction on speech that cannot survive strict scrutiny under the First Amendment.  *See* Def.'s Br. at 16–19.  Alternatively, Defendant argues that, even if Section 1692c(b) is subject to the lower standard of intermediate scrutiny, the statute also would fail that standard of review.  *See* Def.'s Br. at 19–21.  Neither argument is pressed in Defendant's reply, and so the Court should deem the constitutional challenge abandoned altogether.  *Cf. Doe v. Indyke*, 465 F. Supp. 3d 452 (S.D.N.Y. 2020) ("Defendants do not respond to this argument in reply, and the Court deems them to have abandoned the argument." (citing *Carlisle Ventures, Inc. v. Banco Español de Crédito, S.A.*, 176 F.3d 601, 609 (2d Cir. 1999))).  But if the Court does consider their merits, it should uphold Section 1692c(b) as consistent with the First Amendment, even as applied to Defendant's alleged conduct.

### A.     Section 1692c(b) is subject to intermediate scrutiny.

#### 1.     The speech at issue is commercial speech.

For First Amendment purposes, the Supreme Court has long distinguished between "noncommercial expression" and "[e]xpression concerning purely commercial transactions"—*i.e.*, "commercial speech." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455–56 (1978).  The category of commercial speech includes expression "related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562 (1980).  Because their "aim is to persuade, or in the worst case, intimidate, a debtor into making payment," *ACA Int'l v. Healey*, 457 F. Supp. 3d 17, 26 (D. Mass. 2020), communications made in the

course of debt collection generally constitute commercial speech. *Cf. Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 137 (3d Cir. 2020) (finding regulation governed commercial speech where "all affected speech is either speech soliciting a commercial transaction or speech necessary to the consummation of a commercial transaction" (cleaned up)).

Defendant's alleged communication with a commercial mail vendor in connection with collecting Plaintiff's debt is properly considered commercial speech. Defendant communicated with the mail vendor so that the vendor could take an action—sending a letter to Plaintiff—that would further Defendant's economic interest in collecting Plaintiff's debt. *See* Compl. ¶¶ 8–10. Nothing about that communication, as alleged, involved matters of public concern or expressed a point of view. Treating Defendant's alleged communication as commercial speech would accord with the decisions of other courts that, in litigation under the FDCPA, have found similar communications to constitute commercial speech. *See, e.g.*, *Berg v. Merchants Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1344–45 (S.D. Fla. 2008) (applying commercial speech standards to debt-collection voicemails challenged under Section 1692c(b)); *Koby v. ARS Nat. Servs., Inc.*, No. 09-cv-0780, 2010 WL 1438763, at *6 (S.D. Cal. Mar. 29, 2010) (same); *Mark v. J.C. Christensen & Assocs., Inc.*, No. 09-cv-100, 2009 WL 2407700, at *6 (D. Minn. Aug. 4, 2009) (same). Indeed, Defendant agrees, stating that its alleged communication "can only be classified as commercial." Def.'s Br. at 17.

2.  Intermediate scrutiny is the appropriate standard of review.

Because Defendant's alleged communication is commercial speech, the application of Section 1692c(b) to regulate it only need satisfy intermediate scrutiny. Unlike most noncommercial expression, commercial speech "occurs in an area traditionally subject to government regulation." *United States v. Edge Broad. Co.*,

509 U.S. 418, 426 (1993) (internal quotation marks omitted). And the government "does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Ohralik*, 436 U.S. at 456. Commercial speech thus falls outside the heartland of First Amendment protection for speech with an expressive component. *Cf. Matal v. Tam*, 137 S. Ct. 1744, 1764 (2017) (acknowledging arguments that commercial speech with "an expressive component" might warrant greater constitutional protection); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (noting that "restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct"). Instead, commercial speech is entitled to only "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values." *Ohralik*, 436 U.S. at 456.

To enforce this limited degree of protection, courts subject most restrictions on commercial speech to intermediate scrutiny under the Supreme Court's decision in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*. *See* 447 U.S. at 566.[7] The weight of authority makes clear that intermediate scrutiny is the appropriate standard of review for evaluating restrictions on commercial speech imposed by the FDCPA. *See, e.g.*, *Berg*, 586 F. Supp. 2d at 1344–45; *Koby*, 2010 WL 1438763, at *6; *Mark*, 2009 WL 2407700, at *6; *ACA Int'l*, 457 F. Supp. 3d at 26; *Stover v. Fingerhut Direct Mktg., Inc.*, 709 F. Supp. 473, 479 (S.D. W. Va. 2009).

---

[7] The Supreme Court has drawn a distinction between commercial-speech regulations that outright restrict truthful commercial messages, which are subject to intermediate scrutiny under *Central Hudson*, and disclosure requirements aimed at preventing deception, which are subject to an even more deferential standard of review. *See Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249–51 (2010) (noting distinction); *Zauderer v. Office of Disciplinary Counsel of the Supreme Court,* 471 U.S. 626, 650 (1985) (declining to apply *Central Hudson* standard in light of "material differences between disclosure requirements and outright prohibitions on speech").

Given that the speech at issue in this case is wholly commercial in nature, the Court should follow this authority and assess the constitutionality of Section 1692c(b) under *Central Hudson*'s intermediate standard of review for regulations that restrict commercial speech.

      3.    <u>Strict scrutiny would be inappropriate in this case.</u>

Defendant, though, urges this Court to apply the highest standard of constitutional review:  strict scrutiny.  *See* Def.'s Br. at 16–18.  As Defendant reads Section 1692c(b), it "can communicate with a consumer about almost any topic and not run afoul of [the statute]—that is, unless it is 'a communication in connection with the collection of any debt.'"  *Id.* at 18 (quoting 15 U.S.C. § 1692c(b)).  Moreover, Defendant argues, "regulators and courts must literally examine the content of a communication to determine whether" it violates the statute, and so Section 1692c(b) "by its plain terms is a content-based restriction."  *Id.*  Drawing on the Supreme Court's decisions in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), and *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ("*AAPC*"), Defendant concludes that such restrictions are per se subject to strict scrutiny, whether or not the regulated speech is commercial in nature.  Def.'s Br. at 18.  But Defendant's understanding of the statute is wrong—as explained below,  Section 1692c(b) distinguishes between lawful and unlawful communications based on their economic context, not the message they convey—and it is irrelevant in any event, as intermediate scrutiny would be the proper standard of review whether Section 1692c(b) is content-based or not.

**A.**  As a threshold matter, Section 1692c(b) is not, in fact, content-based because, under the statutory text, the *content* of a communication does not provide the dividing line for purposes of liability.  Section 1692c(b) is violated when a debt collector, in connection with attempting to collect on a debt, communicates with a

prohibited third party.  *See* 15 U.S.C. § 1692c(b) (subject to certain exceptions, "a debt collector may not communicate, *in connection with the collection of any debt*, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" (emphasis added)).  On its face, then, the statute distinguishes between lawful and unlawful communications based on two factors:  (1) the economic activity in which the communicators are engaged, and (2) the identity of the recipient of a debt collector's communication.  So unlike regulations that are properly subjected to strict scrutiny, Section 1692c(b) is not focused on the content of a regulated party's speech.

Of course, the words used in a particular communication may shed light on whether a debt collector was engaged in the regulated economic activity—the collection of a debt.  But the *content* of a given communication is only relevant to establishing whether it was transmitted *within* the regulated economic context.  *Cf. Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010) "[C]ommunication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA."); *see also Owens-Benniefield v. Nationstar Mortg. LLC*, 258 F. Supp. 3d 1300, 1309 (M.D. Fla. 2017) (even though communication directly referenced debt, it was not covered because the communication did not constitute debt collection activity).  And just as "[t]he First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent," *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993), consideration of the content of a particular communication to establish a violation of Section 1692c(b) does not render the statute presumptively unconstitutional.  The consideration of the content of a debt collectors' speech as evidence of the type of activity involved does not change the fact that Section

1692c(b)'s restriction is directed at economic activity. *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2373 (2018) ("[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." (citation omitted, brackets in original)).

**B.** Even if the Court were to assume that Section 1692c(b) is content-based within the meaning of the Supreme Court's precedents, Defendant would still be wrong about what follows from that conclusion. According to Defendant, content-based restrictions must be subject to strict scrutiny, whether or not the speech regulated is commercial in nature. *See* Def.'s Br. at 18 ("[S]trict scrutiny is the standard in which to evaluate a content-based restriction on commercial speech."). But no such categorical rule applies here.

To be sure, the decisions in *Reed* and *AAPC* call for strict scrutiny of laws that "appl[y] to particular speech because of the topic discussed or the idea or message expressed," *Reed*, 576 U.S. at 163, or that, though facially neutral, "cannot be justified without reference to the content of the regulated speech," or "were adopted by the government because of disagreement with the message the speech conveys," *id*. at 164. *See AAPC*, 140 S. Ct. at 2346–47. Thus, in *Reed*, the Supreme Court classified as content-based (and invalidated) a municipal sign ordinance that directly discriminated among specifically described categories of speech based on their subject matter. In particular, the ordinance "identifie[d] various categories of signs based on the type of information they convey[ed], then subject[ed] each category to different restrictions." *Reed*, 576 U.S. at 159; *see also id*. at 159–161. The restrictions thus "depend[ed] *entirely* on the communicative content of the sign," *id*. at 164 (emphasis added), and "[i]deological messages [we]re given more favorable treatment than messages concerning a political candidate, which [we]re themselves given more favorable treatment than messages announcing an assembly of like-minded

individuals," *id.* at 169.   Similarly, in *AAPC*, the Supreme Court invalidated a
provision of the Telephone Consumer Protection Act that expressly exempted speech
concerning government-debt collection from prohibitions that applied to all other
forms of debt-collection speech.  140 S. Ct. at 2347.

Critically, though, those decisions do not repudiate the Supreme Court's
longstanding approach to commercial speech, which accords more generous review to
commercial regulations precisely because of commercial speech's content.  *See, e.g.*,
*Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 772 n.24
(1976) (noting less protection is warranted because commercial speech is both "more
easily verifiable by its disseminator" and, given the profit motive of commercial
actors, less likely to be "chilled by proper regulation"); *see also Matal*, 137 S. Ct. at
1767 (Kennedy, J., concurring) (suggesting that content-based discrimination is not
"of serious concern in the commercial context").   Neither *Reed* nor *AAPC* involved
regulations of commercial speech, and neither decision expresses doubt that *Central
Hudson* remains the controlling precedent for commercial speech.   Indeed, the
plurality opinion in *AAPC* reaffirms the Court's traditional, more-relaxed approach
to scrutinizing laws that regulate commercial activity.  140 S. Ct. at 2347 ("Our
decision is not intended to expand existing First Amendment doctrine or to otherwise
affect traditional or ordinary economic regulation of commercial activity.").   The
opinion even expressly characterizes the FDCPA as a statute that "regulate[s] debt
collection" and likens the FDCPA to the sort of "restrictions directed at commerce or
conduct" that may impose "incidental burdens on speech" without running afoul of
the First Amendment.   *Id.*   And, in any event, the Second Circuit has continued to
apply intermediate scrutiny to content-based restrictions on commercial speech even
after *Reed*.   *See Vugo, Inc. v. City of New York*, 931 F.3d 42, 49–50 (2d Cir. 2019);
*Accord Greater Phila. Chamber of Commerce*, 949 F.3d at 137–38; *Aptive Env't, LLC*

- 16 -

*v. Town of Castle Rock*, 959 F.3d 961, 982, 987 (10th Cir. 2020); *Retail Digital Network LLC v. Prieto*, 861 F.3d 839, 846–49 (9th Cir. 2017); *Mo. Broads. Ass'n v. Lacy*, 846 F.3d 295, 300 & n.5 (8th Cir. 2017); *Khimmat*, 2022 WL 356561, at *5.   Thus, regardless of the nature of Section 1692c(b)'s restrictions on third-party contacts, the commercial speech framework articulated in *Central Hudson* should control the Court's assessment of Defendant's as-applied challenge.

**B.    Section 1692c(b) passes intermediate scrutiny.**

As discussed above, restrictions on commercial speech must survive intermediate scrutiny under *Central Hudson.  Vugo*, 931 F.3d at 51.   Under *Central Hudson*, courts "must determine whether: (1) the speech restriction concerns lawful activity; (2) the [government's] asserted interest is substantial; (3) the prohibition directly advances that interest; and (4) the prohibition is no more extensive than necessary to serve that interest."   *Id.* (internal quotation marks omitted).   Section 1692c(b) satisfies this standard as applied to Defendant's alleged communication with a commercial mail vendor.

There is no real dispute in this case that the government's interest in restricting debt collectors' speech to third parties in connection with collecting on a debt is substantial.   Courts have noted that "invasions of individual privacy" from disclosures by debt collectors are "a core concern animating the FDCPA." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (citing 15 U.S.C. § 1692(a)); *accord Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021); *Williams v. Rushmore Loan Mgmt. Servs., LLC*, No. 3:15-CV-673-RNC, 2018 WL 1582515, at *6 (D. Conn. Mar. 31, 2018) ("The FDCPA is meant to protect consumers from financial stress and invasions of privacy . . . .").   Driven by this concern, Congress considered Section 1692c(b)'s restrictions on third-party communications to be an "extremely important protection."   *Evankavitch v. Green Tree Servicing, LLC*, 793

- 17 -

F.3d 355, 360 (3d Cir. 2015) (quoting S. Rep. 95–382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699).   Consistent with these observations, courts considering Section 1692c(b) have noted that the provision's speech restrictions relate to Congress's interest in protecting consumer privacy.  *See Bank v. Pentagroup Fin., LLC*, No. 08-CV-5293-JG-RML, 2009 WL 1606420 (E.D.N.Y. June 9, 2009) ("The purpose of § 1692c is to protect the consumer's privacy and reputation."); *see also Khimmat*, 2022 WL 356561, at *5 ("The government has a substantial interest in limiting the number of people exposed to knowledge that a consumer is a debtor . . . ."); *Koby*, 2010 WL 1438763, at *6; *Berg*, 586 F. Supp. 2d at 1345; *Mark*, 2009 WL 2407700, at *8.  Defendant does not dispute that this interest is substantial.  *See* Def.'s Br. at 20 (recognizing "Congress's purpose in banning abusive third party 'pressure contacts'").

Because the government has a substantial interest in safeguarding debtors' privacy during the debt collection process, the Court will next need to consider whether the restriction "directly advances" that interest.  *Vugo*, 931 F.3d at 51. Defendant contends that this prong is not satisfied because Section 1692c(b)'s application in this case would "extend[] far beyond prohibiting abusive practices of contacting bystanders."  Def.'s Br. at 20.  But that argument goes to the proper tailoring of the statute, not whether it actually accomplishes Congress's purpose.  And in any event, as multiple courts have found, Section 1692c(b) directly advances the government's interest in consumer privacy by prohibiting debt collectors from communicating with unrelated third parties when engaged in debt collection.  *See Berg*, 586 F. Supp. 2d at 1345; *Mark*, 2009 WL 2407700, at *8; *cf. Douglass*, 765 F.3d at 303–04 (characterizing account information as "a core piece of information pertaining to . . . status as a debtor" that if disclosed, "could be used to expose [a debtor's] financial predicament").   The effect of this restriction—limiting

- 18 -

communications to those with direct interests in the debt, unless the consumer has effectively waived the right to privacy— helps to stop abusive tactics such as publicizing debts to employers and associates. Thus, it "directly advances" the government's interest by alleviating real harms to a material degree. *Vugo*, 931 F.3d at 51.

Given that Section 1692c(b) directly advances the government's interest in protecting consumer privacy when the consumer is a target of debt collection, the constitutional inquiry in this case turns on whether the statute's restrictions are drawn in reasonable proportion to the government's interest. *See id.* at 154. Defendant contends that Section 1692c(b) cannot satisfy intermediate scrutiny because the statute prohibits confidential business communications "to all third parties, minus only six enumerated exceptions," with "no alternative channels for such communications by debt collectors." Def.'s Br. at 20. Defendant further argues that, as applied to communications between debt collectors and commercial mail vendors, Section 1692c(b) "does nothing to curb abusive debt collection practices." *Id.*

Defendant's framing gets the intermediate-scrutiny analysis wrong. When regulating commercial speech, "[t]he Government is not required to employ the least restrictive means conceivable"—rather, its chosen restriction must have "a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'" *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 188 (1999) (quoting *Bd. of Trustees of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)). Prohibiting debt collectors from communicating with unenumerated third parties in connection with collecting on a debt, save for certain limited purposes and unless the debtor has given prior consent to such communications, limits the potential for harassment and purposeful or inadvertent disclosures of sensitive personal information. *See Berg*,

586 F. Supp. 2d at 1345.[8]  Section 1692c(b) also permits debt collectors to obtain permission for other third-party communications, and debt collectors may communicate with the restricted third parties outside of the context of collecting on a debt.  And, of course, debt collectors remain free to communicate directly with debtors.  Those contours are appropriately drawn to address the privacy concerns that Congress sought to address; that other statutory schemes like the GLBA and HIPAA might be drawn differently has little constitutional relevance, particularly where they address different problems and contexts.

To be sure, in the debt collection context, the typical disclosure to a commercial mail vendor may be unlikely to cause significant privacy harms to an individual consumer, and the broad prohibition Plaintiff advocates might create inefficiencies in debt collectors' business models.  But restricting the dissemination of consumer information to vendors does advance consumers' privacy interest, even in the aggregate—vendors are often the source of data breaches, and use of vendors by debt collectors increases consumers' exposure to the privacy risks associated with data breaches.  *See, e.g.*, Niket Nishant, *Morgan Stanley Faces Data Breach, Corporate Client Info Stolen in Vendor Hack*, Reuters (July 8, 2021), https://perma.cc/D8XV-66C2.

The degree of harm is surely relevant to any claim for actual damages, and, as discussed *supra* at 7–8, as a general matter it might prevent a debtor from

---

[8] Notably, in interpreting Section 1692c(b) to apply to debt-collector communications with commercial mail vendors, the *Hunstein* court invoked this precise rationale.  *See Hunstein II*, 17 F.4th at 1027 (finding that "disclosure of intensely private information—including, most notably, the status of Hunstein's debt, his minor son's name, and that his debt arose from his son's medical treatment— could clearly offend a reasonable person and is not of legitimate public concern").

establishing standing to sue under the Supreme Court's decision in *TransUnion*.[9] But that Defendant may face increased costs from economic regulation does not undermine Section 1692c(b)'s proportionality to the issues of consumer privacy that Congress sought to address. *See Mark*, 2009 WL 2407700, at *5 n.4 ("[T]he argument that the FDCPA, as enacted, unfairly burdens the collection industry and targets conduct that, in [the debt collector's] view, causes minimal harm to consumers, is a policy consideration more appropriately directed to the legislative branch of government."). For constitutional purposes, it suffices that Congress crafted Section 1692c(b)'s prohibition in reasonable proportion to the problem of preserving debtors' privacy, while leaving Defendant substantially free to communicate in connection with its collection on a debt with relevant persons. *Accord Bd. of Trustees*, 492 U.S. at 480 (while regulators must distinguish the harmless from the harmful, "the distinguishment [need not be] 100% complete"). The burden of performing in-house a particular commercial function (the preparation and mailing of dunning letters) that Defendant believes would more efficiently be outsourced does not render Section 1692c(b) unconstitutional.

## C.   Section 1692c(b) also would pass strict scrutiny.

Although the free-speech question in this case should be resolved under *Central Hudson*'s intermediate scrutiny standard, the statute would also survive strict scrutiny. Laws subject to strict scrutiny must be "narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226 (2015). A statute fails the least-restrictive-means test only if "less restrictive alternatives would be *at least as effective* in achieving the legitimate purpose that the statute was enacted to serve." *Reno v. ACLU*, 521 U.S. 844, 874 (1997) (emphasis added). Importantly, the First

---

[9] To reiterate, the United States takes no position on Plaintiff's standing to sue.

Amendment does not require laws to be "perfectly tailored." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 454 (2015).

Defendant does not appear to dispute that preventing abusive debt collection efforts that threaten consumer privacy is a compelling interest. Instead, it contends in conclusory fashion that Section 1692c(b) is "a blanket ban on incidental third-party communications [that] is not narrowly tailored" and "does nothing" to advance Congress's interest in "preventing abusive debt collection practices." Def.'s Br. at 19.

But a statute fails the least-restrictive-means test only if "less restrictive alternatives would be *at least as effective* in achieving the legitimate purpose that the statute was enacted to serve." *Reno v. ACLU*, 521 U.S. 844, 874 (1997) (emphasis added). And here, Congress's chosen scheme "restricts a narrow slice of speech," *Williams-Yulee*, 575 U.S. at 453—speech to third parties in connection with the collection of a debt. The statute leaves debt collectors free to communicate with those third parties in other contexts and for other purposes, permits debt collectors to communicate with the debtors themselves, as well as individuals with a direct legal relationship to the debt, and allows debt collectors to seek a debtor's permission to contact a broader set of parties. *See* 15 U.S.C. § 1692c(b). Thus, rather than fully abridge debt collectors' ability to communicate with third parties in connection with the collection of a debt, Congress has provided *consumers* with the ability to safeguard their privacy interests, instead of allowing debt collectors to judge those facts for themselves.

Defendant may believe that *its* chosen mail vendor will have little interest in Plaintiff's debt. But "most problems arise in greater and lesser gradations, and the First Amendment does not confine [the government] to addressing evils in their most acute form." *Williams-Yulee*, 575 U.S. at 454. Allowing debt-collector communications to mail vendors in connection with collecting on a debt could open

the door to exactly the sort of privacy disclosures that Congress sought to prevent in enacting Section 1692c(b)—permitting, for example, debt collectors to communicate with mail vendors that employ a debtor's friends, neighbors, or acquaintances.  It would also put consumers' data at greater risk of a data breach because the data would be stored in multiple locations, creating more attack vectors.  Thus, that less stringent rule would not be as effective in advancing Congress's goals.

Congress determined that unauthorized communications with third parties in connection with collection on a debt risk compromising the privacy interests of debtors.  A law generally prohibiting such communications while a debt collector is collecting on a debt, subject to relevant exceptions and to the prior authorization of the debtor, is narrowly tailored to address that concern.  Thus, even if it applies strict scrutiny, the Court should reject Defendant's free-speech challenge to Section 1692c(b).

## CONCLUSION

For all the reasons above, if the Court reaches Defendant's constitutional challenge, it should find that the application of Section 1692c(b) to Defendant's alleged conduct is constitutional.

Dated:  March 31, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY R. FARBY
Assistant Branch Director

*/s/ Cody T. Knapp*
CODY T. KNAPP (NY Bar No. 5715438)
HANNAH M. SOLOMON-STRAUSS
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 532-5663
Facsimile: (202) 616-8470
E-mail: cody.t.knapp@usdoj.gov

*Counsel for the United States of America*

## <u>Certificate of Service</u>

I hereby certify that, on March 31, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all parties in this case.

*/s/ Cody T. Knapp*
CODY T. KNAPP
New York Bar No. 5715438
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 532-5663
Facsimile: (202) 616-8470
E-mail: cody.t.knapp@usdoj.gov

*Counsel for the United States of America*
